REARDON v. TOLEDO, ST. L. & W. R. CO.

(Circuit Court of Appeals, Sixth Circuit. July 23, 1906.)

No. 1,505.

MASTER AND SERVANT—ACTION FOR INJURY TO BRAKEMAN—QUESTIONS FOR JURY.
   Conflicting evidence considered, in an action by a brakeman against a railroad company to recover for a personal injury resulting from plaintiff falling under the cars in the night after dropping from an engine to open a switch, and *held* to require the submission to the jury of the question of defendant's negligence in failing to keep its right of way in the vicinity of the switch in a reasonably safe condition, and also the question of plaintiff's contributory negligence.

   [Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 1021, 1022, 1089–1132.]

In Error to the Circuit Court of the United States for the Northern District of Ohio.

Charles A. Thatcher, for plaintiff in error.
Charles A. Schmettan, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges, and THOMPSON, District Judge.

LURTON, Circuit Judge. This was an action to recover damages for personal injuries sustained by the plaintiff while in the service of the defendant company as a brakeman. At the conclusion of all of the evidence the court instructed a verdict for the defendant. The negligence averred was in respect of the condition of the right of way

adjacent to a switch; the place being one used by brakemen in getting on and off moving engines and cars, for the purpose of handling a switch leading from a main track in defendant's Toledo yards to a private mill adjacent to same. There was evidence tending to show that one of defendant's yard tracks is laid in or upon ground parallel to one of the public alleys of the city of Toledo. This track is some two feet below the level of the existing alleyway on the east. Upon the alley side, and only some 4 feet from the easterly rail, is a wooden retaining wall against the bank of the alleyway. There was also evidence tending to show that the earth of this alleyway adjacent to the retaining wall is at places sunken below the top of this wooden wall, as well as below the general level of the alley. This depression is said to vary from 6 to 18 inches, and that grass and weeds conceal it in part from observation.

The evidence is not clear as to whether this wall is upon the right of way or maintained by the defendant company. Neither is the evidence clear as to whether the defendant's right of way covers any part of the alleyway behind the wooden wall. But there was some substantial evidence tending to show that both the retaining wall and some two or three feet of the ground behind it was upon the railway right of way, and as such had been maintained by the defendant. This evidence is found in the testimony of the witnesses James G. Kaney and Emma Stiegman, and amounts to something more than a scintilla, and enough to carry to the jury the question as to whether the company had been negligent in the maintenance of its roadway at this point. There was also evidence that the plaintiff in the early night time was engaged in switching at this point, and that it was his duty to handle a switch leading from the yard track at this point to certain adjacent mills. For this purpose he says he got upon an engine which was backing up this track with certain cars intended for this mill switch; that when the engine reached a point near the switch he stepped from the engine to this retaining wall, the wall being but a few inches below the floor of the engine cab, for the purpose of signaling the engineer when his train had passed the switch, and to then turn the switch so that the engine could enter. Plaintiff testified in substance that the top of this retaining wall was decayed or broken, and that his foot slipped and he fell backward upon the track, and that a passing car ran over his hand and cut it off. He also testified that he did not and could not see the condition of this retaining wall in the darkness, and did not know its bad condition. The switch which plaintiff was to handle was upon the ground level with the track, or substantially so, and upon the opposite side of the track to the retaining wall upon which plaintiff stepped. There was a conflict in the evidence as to whether plaintiff got off upon the proper side for the discharge of his duty.

The contention of plaintiff was that it was his duty to get off upon and give his signals from the engineer's side of the engine, and not upon the opposite, or fireman's, side. If the plaintiff for his own convenience got off upon one side, when the proper thing for him to do was to get off upon the other, he cannot throw the responsibility upon

the defendant for an injury due to his own action in getting off at a place where it was not expected he would get off. There was some evidence, however, that it was the usual and customary thing for brakemen to get off upon this retaining wall, if that was the engineer's side and the purpose was to give him a signal for this switch. There was, upon the other hand, evidence tending to show that plaintiff should have gotten off upon the switch side and given the signal to the fireman, whose business it would be to .communicate the same to the engineer. Plaintiff also introduced evidence to excuse his not getting off on the switch side by evidence that the ground adjacent to the switch was low and that he would have to get off in a pool of water if he had stepped off on that side. On the other hand, the records of the Weather Bureau showed that since noon of the day of the injury the mercury had not been above 20, a fact which, if true, would tend to show that the ground must have been frozen. It can-- not be said, however, that there was not a conflict as to the condition of the ground around this switch where plaintiff was hurt. Un-- doubtedly the court should have given some instruction concerning the high grade of record evidence of temperature upon a certain day as compared to the memory of witnesses, whether interested or not. Still it was not impossible for error to occur in the records of the Weather Bureau, and the fact may be that the presence of a pool of water around the switch stand presented some reason for getting off upon the re- taining wall upon opposite side of track.

Upon a consideration of the whole case we have reached the con-- clusion that the question of contributory negligence in getting off upon the side opposite to the switch, as well as the question of plaintiff's im- plied knowledge of the condition of this retaining wall and of the ground behind it, were questions for the jury, under proper directions by the court. The other errors assigned are without merit.

Reversed, and remanded for a new trial.