SHREVE et al. v. CHEESMAN et al.

(Circuit Court of Appeals, Eighth Circuit. September 2, 1895.)

No. 560.

1. CIRCUIT COURT OF APPEALS — JURISDICTION — WRIT OF ERROR TO SUPREME COURT PENDING.

The fact that a writ of error has been sued out of the supreme court to review a judgment of the circuit court for want of jurisdiction does not prevent the circuit court of appeals from entertaining a writ of error to review an order, made after the judgment was entered, which denies a new trial claimed under a statute of a state which gives a defeated party a right to a second trial in an action of ejectment.

2. PRACTICE — BILL OF EXCEPTIONS.

The fact that a bill of exceptions, showing the proceedings upon a motion for such a new trial, after judgment, was certified after the issue of a writ of error from the supreme court to review the judgment, is not a fatal objection to such bill.

3. COSTS — AS CONDITION OF NEW TRIAL — COLORADO STATUTE.

Code Civ. Proc. Colo. 1887, § 272, provides that the defeated party in an action to recover land may, at any time before the first day of the term succeeding that at which judgment is rendered against him, pay all costs recovered by such judgment, and thereupon have a new trial of the case. Another statute (1 Mills' Ann. St. 1891, § 677) provides that a successful plaintiff shall recover against the defendant his costs to be taxed. *Held,* that the provision of section 677 entitles the successful party to all costs of the action, including those of a prior mistrial as well as those of the

final trial, and a defeated party seeking a new trial under section 272 of the Code must first pay all costs of the prevailing party at a mistrial, as well as his other costs.

4. SAME—PRIOR ERRONEOUS DECISION—RULE OF PROPERTY AND PRACTICE.

A party who, after a mistrial, had been defeated on the second trial in an action in the circuit court of the United States in Colorado to recover lands, paid the costs of the second trial, and in due time applied for a new trial under Code Civ. Proc. Colo. § 272. Some years before, another judge, sitting in the same court, had decided that it was unnecessary, in such a case, to pay the costs of the mistrial. The judge to whom the application for new trial was made in this case denied it, after holding it under advisement beyond the time for paying the costs, on the ground that the costs of the new trial should have been paid. *Held* that, as the former decision, though erroneous, might well be regarded as a rule of property and practice, in reliance upon which the applicant had omitted to pay the costs in time, the order denying the new trial should be reversed, and a new trial granted, upon condition of the applicant's paying the costs within 60 days. Thayer, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the District of Colorado.

Thomas M. Patterson and Charles C. Parsons, for plaintiffs in error.

Tyson S. Dines (Charles J. Hughes, Jr., on the brief), for defendants in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge. Does section 272, c. 23, of the Colorado Code of Civil Procedure of 1887, require the defeated party, in an action to recover the possession of real property to pay the costs of a prior mistrial of the action, in which the jury has disagreed, to entitle him to a new trial as of right under that section? If so, do the facts that the circuit court in which the action was pending had, several years prior to his application, decided that this section did not require such payment, and that the defeated party complied with the provisions of that section as it had been construed by that court, relieve him from the consequences of his failure to comply with the terms of the section as properly construed? These are the principal questions presented by this record.

The defendants in error, Walter S. Cheesman and George W. Clayton, brought an action in the court below against the plaintiffs in error, James A. Shreve, J. A. Perkins, and others, for the possession of certain real property, and for damages for the removal of minerals therefrom. Issues were joined, the action was tried, and the jury disagreed. At the May term of the circuit court in 1893 the action was tried again, a verdict was returned, and on June 27, 1893, a judgment was rendered in favor of the defendants in error. Section 272 of the Code of Civil Procedure of Colorado provides:

"Whenever judgment shall be rendered against either party, under the provisions of this chapter, it shall be lawful for the party against whom such judgment is rendered, his heirs or assigns, at any time before the first day of the next succeeding term, to pay all costs recovered thereby, and upon application of the party against whom the same was rendered, his heirs or assigns, the court shall vacate such judgment and grant a new trial in such case."

On November 3, 1890, in Parkhurst v. Price,[1] the resident district judge and acting circuit judge of the district of Colorado delivered an opinion, in which he held that a party who was finally defeated in an action for the recovery of possession of real property was not required to pay the costs of a prior mistrial of the action in which the jury had disagreed, in order to entitle him to a new trial under this section. In accordance with this ruling, the plaintiffs in error paid all the costs in this action, except the costs of the mistrial, and on November 2, 1893, before the term next succeeding the entry of the judgment, applied for a new trial under this section. It so happened that the district judge of another district was then temporarily holding the circuit court in the district of Colorado. He heard this application, took it under advisement, and on May 26, 1894, denied it, on the ground that the defendants in error had failed to pay the costs as required by law. On November 23, 1894, the plaintiffs in error sued out the writ of error in this case to reverse this order denying the new trial.

A motion was made by the defendants in error to dismiss this writ because the plaintiffs in error had, on June 26, 1894, sued out of the supreme court of the United States a writ of error to reverse the judgment in this action, on the ground that the court below had no jurisdiction of the case. The order denying the new trial, which the statute granted as a right, is a final decision that is reviewable in this court under the act which established it. 26 Stat. 828, c. 517, § 6; Supp. Rev. St. p. 903, § 6; Standley v. Roberts, 8 C. C. A. 305, 308, 59 Fed. 836; Iron Silver Min. Co. v. Mike & Starr Gold & Silver Min. Co., 6 C. C. A. 180, 56 Fed. 956; Mining Co. v. Campbell, 10 C. C. A. 172, 61 Fed. 932. The fact that the plaintiffs in error are exercising a right, given to them by the same act of congress, to the decision of the supreme court upon another question in this case, is no reason for us to deprive them of their right to a hearing and determination of the question committed to our decision by that act. The fact that our writ of error was not issued until after the supreme court had issued its writ is not material. The question before the supreme court arises upon proceedings anterior to the judgment, and the question before this court upon proceedings subsequent to the judgment, so that the requisite records, as well as the questions before the two courts, are different, separate, and distinct.

The fact that the bill of exceptions was certified after the writ of the supreme court issued is not a fatal objection to the bill. It was made and certified during the term at which the order denying the new trial was made. It contains a record of the facts disclosed at the hearing which resulted in that order. The fact that a writ of error had been issued to review the judgment certainly did not deprive the court below of its jurisdiction, or relieve it of its duty, to make a true record of the proceedings in that court after the judgment. This bill of exceptions is that record. It was rightfully made, and is properly in this case for our consideration. Hunnicutt v. Peyton, 102 U. S. 333, 353, 354. The motion to dismiss is denied.

Section 272 of the Colorado Code, supra, gives to the party against

[1] Not reported. Oral opinion.

whom a judgment for the recovery of real property is rendered a right "to pay all costs recovered thereby," and then to have a new trial of the action.    The statutes of Colorado provide:

"If any person shall sue in any court in this state in any action, real, personal, or mixed, or upon any statute for any offense or wrong immediately personal to the plaintiff, and shall recover any debt or damages in such action, then the plaintiff or demandant shall have judgment to recover against the defendant his costs to be taxed; and the same shall be recovered, together with the debt or damages, by execution, except in the cases hereinafter mentioned."    1 Mills' Ann. St. Colo. 1891, § 677.

In the case at bar the defendants in error recovered a judgment for the possession of certain real property, for $28,957.15 damages, "and their costs to be taxed."    Their costs at the mistrial were taxed at the amount of $1,814.81, and the costs of the last trial were taxed at $128.97.    The plaintiffs in error paid the latter, but did not pay the former, amount.    It goes without saying, at this late day, that under section 721, Rev. St., the defendants in error were entitled to recover such costs as were allowed by the statutes of Colorado, in the absence of any act of congress prescribing a different rule.    Hathaway v. Roach, 2 Woodb. & M. 63, Fed. Cas. No. 6,213;  Ethridge v. Jackson, 2 Sawy. 598, Fed. Cas. No. 4,541.    An exhaustive and interesting argument drawn from the history of the allowance of costs to the prevailing party has been made by counsel for plaintiff in error to show that the words "costs to be taxed," in section 677, supra, of the Colorado statutes, mean his costs at the last trial to be taxed.    This argument is, in substance, that at common law no costs were recovered;  that costs were first allowed in A. D. 1278 by the statute of Gloucester (6 Edw. I. c. 1);  that in 1800, in Bird v. Appleton, 1 East, 111, the court of king's bench held that under that and numerous ancillary statutes the costs of a mistrial could not be recovered by the party who finally prevailed;  that this construction was adopted by the court of common pleas in 1816, in Worcestershire & S. Canal Co. v. Trent & M. Nav. Co., 2 Marsh. C. P. 475;  that the state of Colorado has provided that in that state the common law of England, so far as the same is applicable and of a general nature, and all acts and statutes of the British parliament made in aid of or to supply the defects of the common law, prior to the fourth year of James I., which are of a general nature, and not local to that kingdom, shall be the rule of decision, and shall be considered as of full force until repealed by legislative authority, with certain exceptions, not material here (Mills' Ann. St. Colo. 1891, § 4184);  that it is a settled rule that whenever a statute of a foreign state is adopted, the construction placed upon it by the judicial tribunals of that state before its adoption is adopted with it, and that consequently the rule declared in Bird v. Appleton and Worcestershire & S. Canal Co. v. Trent & M. Nav. Co., that a prevailing party cannot recover his costs of a mistrial, has become the law of the state of Colorado.    The argument is logical and persuasive.    It would be entitled to serious consideration if the statute of Gloucester and the acts of parliament that enlarged its scope were actually in force in the state of Colorado.    They are not.    The statute of that state, which we have quoted, and that alone, measures the rights of parties to

costs in this action, and that statute bears about the same relation to the statute of Gloucester that one of Fulton's steamboats does to the modern ocean liner. The statute of Gloucester provided that the demandant might recover against the tenant the costs of his writ purchased, together with his damage, and that the act should hold place in all cases where a man recovered his damage. The statute of Colorado provides that the prevailing party shall recover his costs to be taxed. It is plain that the construction placed upon the former statute could be of very little value as a guide to the proper interpretation of the latter. Moreover, the statute of Colorado needs no interpretation. Its language is simple and plain. "His costs to be taxed" cannot mean less than all his costs in the action to be taxed. The moment an attempt is made to limit these words to a part of his costs, we are met by the unanswerable question, what part? That which was before clear and certain becomes a matter of doubt and conjecture. When the meaning of a statute is plain, arguments drawn from the history of the legislation it embodies and the construction given to ambiguous statutes on the same or similar subjects serve only to create doubt where none should exist, and to confuse the judgment when it would otherwise be sound and clear. There is no better canon of interpretation than that, when a statute is plain and unambiguous, the legislature must be presumed to have intended what it has expressed, and no room is left for construction. Knox Co. v. Morton, 68 Fed. 787; U. S. v. Fisher, 2 Cranch, 358, 399; Railway Co. v. Phelps, 137 U. S. 528, 536, 11 Sup. Ct. 168. It was as imperatively necessary for the plaintiffs in error to procure the attendance of their witnesses, and to incur the costs of the mistrial, as it was for them to incur the costs of serving the summons or procuring the attendance of witnesses at the last trial. If they had incurred no costs at the mistrial, they would in all probability have been defeated then. The statute does not except these costs from its general provision, and it would be judicial legislation for the court to create exceptions to the general provisions of this law when the legislature has made none. Where the legislature has made no exception to the positive terms of a general statute, the conclusive presumption is that it intended to make none, and it is not the province of the courts to do so. Madden v. Lancaster Co., 12 C. C. A. 566, 573, 65 Fed. 188; Morgan v. City of Des Moines, 8 C. C. A. 569, 60 Fed. 208; McIver v. Ragan, 2 Wheat. 25, 29; Bank v. Dalton, 9 How. 522, 528; Vance v. Vance, 108 U. S. 514, 521, 2 Sup. Ct. 854.

Our conclusion is that:

The provisions of section 677, Mills' Ann. St. Colo. 1891, that the prevailing party shall recover his costs to be taxed, authorizes him to recover all his costs in the action, including those of a prior mistrial, as well as those of the last trial; and a defeated party who would obtain a new trial under section 272 of the Code of Civil Procedure of Colorado of 1887 must first pay the costs of the prevailing party at a mistrial, as well as all other necessary costs he has incurred in the action. Walker v. Barron, 6 Minn. 508 (Gil. 353); Fitch v. Stevens, 2 Metc. (Mass.) 506; Stoddard v. Treadwell, 29 Cal. 281; Cregin v. Railroad Co., 19 Hun, 349; Howell v. Van Siclen, 8 Hun, 524; Lanz

v. Trout, 46 How. Prac. 94; Wessels v. Carr (City Ct. N. Y.) 6 N. Y. Supp. 535; Isaacs v. Plaster Works, 43 N. Y. Super. Ct. 397, 401. There is no doubt that there are many cases where applications are made for the exercise of the discretion of the court, as in motions for continuances, motions for new trials for cause, and similar applications, in which the trial court has ample power to regulate the costs to be recovered as one of the terms upon which it will exercise its discretion. No reference is made to these cases in this opinion. There was no application for the exercise of any discretion in the court below, and none was exercised.

But the circuit court of the United States for the district of Colorado had, upon full consideration, decided and rendered an opinion, three years before the application for a new trial was made in this case, to the effect that the defeated party was not required to pay the costs of a mistrial in which the jury disagreed, in order to entitle him to a new trial under these statutes; and that decision had never been appealed from or reversed. No court, in Colorado or elsewhere, so far as we can learn, had given any other construction to these statutes. Was not this decision an authoritative declaration of the law of Colorado, and, until reversed, a rule of property and of practice upon which the plaintiffs in error had the right to rely? Chancellor Kent says:

"If a decision has been made upon solemn argument and mature deliberation, the presumption is in favor of its correctness; and the community have a right to regard it as a just declaration or exposition of the law, and to regulate their actions and contracts by it." Kent, Comm. 476.

It is a principle of general jurisprudence that courts of concurrent or co-ordinate jurisdiction will follow the deliberate decisions of each other, in order to prevent unseemly conflicts, and to preserve uniformity of decision and harmony of action. This principle is nowhere more firmly established or more implicitly followed than in the circuit courts of the United States. A deliberate decision of a question of law by one of these courts is generally treated as a controlling precedent in every federal circuit court in the Union, until it is reversed or modified by an appellate court. Striking illustrations of this principle will be found in: Vulcanite Co. v. Willis, 1 Flip. 388, 393, Fed. Cas. No. 5,603, in which Judge Emmons said of these courts: "They constitute a single system; and when one court has fully considered and deliberately decided a question, every suggestion of propriety and fit public action demands it should be followed until modified by the appellate court"; Washburn v. Gould, 3 Story, 122, 133, Fed. Cas. No. 17,214; The Chelmsford, 34 Fed. 399, 402, in which Judge Butler said: "As respects the claim for supplies furnished in Boston, at the owner's instance,—$694.45,—and forwarded to the vessel at Portland, I should have no hesitation in disallowing it in the absence of authority on the subject. * * * I find, however, that the precise question has been decided the other way in The Sarah J. Weed, 2 Lowell, 555, Fed. Cas. No. 12,350; The Agnes Barton, 26 Fed. 542; and The Huron, 29 Fed. 183. * * * In neither of the cases is the subject discussed at any length, or any adequate reason assigned, in my judgment, for the conclusion reached. So great, how-

ever, is the importance I attach to uniformity of decision by courts of co-ordinate jurisdiction, that I feel constrained to adopt the rule thus established in the several districts in which these cases arose. It seems more important that the rule should be uniform and certain than that it should be consistent with principle"; Wells v. Navigation Co., 15 Fed. 561, 570; Reed v. Railroad Co., 21 Fed. 283; American Wood Paper Co. v. Fiber Disintegrating Co., 3 Fish. Pat. Cas. 362, Fed. Cas. No. 320; Goodyear v. Berry, 3 Fish. Pat. Cas. 439, Fed. Cas. No. 5,556; Machinery Co. v. Knox, 39 Fed. 702. Nor has it been thought less vital to a wise administration of justice in the federal courts that the various judges who sit in the same court should not attempt to overrule the decisions of each other, especially upon questions involving rules of property or of practice, except for the most cogent reasons. In Cole Silver Min. Co. v. Virginia & Gold Hill Water Co., 1 Sawy. 685, 689, Fed. Cas. No. 2,990, Mr. Justice Field refused to review the action of the circuit judge, on the ground that such a practice would lead to unseemly conflict. To the same effect are Oglesby v. Attrill, 14 Fed. 214, 215; U. S. v. Biebusch, 1 McCrary, 42, 43, 1 Fed. 213; Appleton v. Smith, 1 Dill. 202, Fed. Cas. No. 498. In U. S. v. Biebusch, Judge McCrary declared that it was well settled in this circuit that the rulings of the district judge while holding the circuit court were not subject to be reviewed in the same court, either by the circuit judge or the circuit justice. In Zinsser v. Krueger, 45 Fed. 572, 574, Judge Green, while presiding in the circuit court for the district of New Jersey, held that a prior decision of a question of law by Judge Butler while he was sitting in that court in another case became a precedent to be implicitly followed in that court, unless it clearly appeared that the principles which governed it had been grossly misunderstood or misapplied. Moreover, there are no decisions to which the maxim, "Stare decisis, et non quieta movere," applies more universally, or with more salutary effect, than to those which construe statutes that establish or declare rules of property. It is universally conceded that it is often more important that these rules should be certain and changeless than that they should be right. Men engaged in active business buy and sell in reliance upon them. Lawyers advise their clients and enforce and protect their rights with constant reference to them; and, while all interests will readily adjust themselves to and protect themselves under erroneous rules, there is neither protection nor safety for any interest under shifting rules. Seale v. Mitchell, 5 Cal. 402, 403; Bates v. Relyea, 23 Wend. 336, 341; Goodell v. Jackson, 20 Johns. 693; 722.

In view of the principles and authorities to which we have adverted, it is not strange that the plaintiffs in error relied with confidence upon a construction given to the statutes of Colorado by the decision of the circuit court in 1890, and attempted to preserve their right to a new trial in accordance therewith. That decision was delivered by a judge whose opinions command the respect and confidence of lawyers and laymen, and it was an authoritative declaration of the law after careful consideration by a court of high rank. It was apparently the only decision upon the question. According to the concurring opinions and practice of the federal judges, this de-

cision was a very persuasive, if not a binding, precedent, not only in the circuit court in Colorado, but in all other United States circuit courts, until reversed or modified by an appellate court. It was a rule of property, a rule to which the doctrine of stare decisis is peculiarly applicable, and it was a rule of practice in the court in which this case was pending. It was in this state of the law that the plaintiffs in error paid the costs which they were required to pay to entitle them to a new trial according to this decision, and applied to the court for that trial within the time prescribed by the statutes. It is not an unreasonable presumption that they would have paid all the costs of the defendants in error if the decision of the circuit court, which had stood unchallenged for three years, and which we now think was erroneous, had never been rendered. It may well be presumed, too, that if the circuit court had announced, when the application was made, that the former decision would be overruled, and that the true construction of the statute required the payment of all the costs, the plaintiffs in error would have paid the costs of the mistrial then, for there was yet time to do so under the statute. The delay of the decision for six months brought its rendition too late to enable them to do so, and gave the order the vicious effect of a retrospective law. The plaintiffs in error were hardly bound to presume that the rule which had been established by the circuit court, and had stood unchallenged for three years, was not the law. Under these circumstances, we are of the opinion that this order ought not to be affirmed so as to give it this retroactive effect. Neither courts nor legislatures should give a retrospective effect to radical changes in rules of property or of practice. It was not the fault of the court below that the business of that court so crowded upon its attention that it could not decide this application for six months after it was made; but the plaintiffs in error ought not to suffer on this account. It is a maxim of the law that "an act of the court shall prejudice no man." Broom, Leg. Max. 122; Rodman v. Reynolds, 114 Ind. 148, 150, 16 N. E. 516. In Rodman v. Reynolds, supra, the supreme court of Indiana said:

"It is reasonable to make a party responsible for what he does himself, or for what he omits to do, but it is not reasonable to make him responsible for what the court does, or omits to do. In such a case as this the party cannot compel the court to act upon his application, and he ought not to be bound by the delay of the court, if he has himself done what was required of him."

The object of the trial of lawsuits is to reach just decisions, and to thereby preserve and protect the rights of litigants. In this case the substantial rights of all parties will, in our opinion, be preserved, and the ends of justice best subserved by an order which will put the parties in this action as nearly as may be in the situation in which they would have been if the change in the rule established by the circuit court had been made when the application for a new trial was presented. Accordingly the order denying the new trial will be reversed, and the cause will be remanded to the circuit court, with directions to enter an order denying the new trial, unless the plaintiffs in error shall, within 60 days after such order is entered, pay to the defendants in error their costs of the mistrial, to wit, $1,814.81 and interest thereon at the rate of 8 per cent. per annum from November

2, 1893, until it is paid, and, in case such payment is made within that time, to enter an order granting the new trial, but, in case such payment is not so made to make the order denying it absolute; and it is so ordered.

THAYER, Circuit Judge (dissenting). I agree with my associates that section 272, c. 23, of the Colorado Code of Civil Procedure, rightly construed, requires the party against whom a verdict is rendered to pay the costs of a prior mistrial, to entitle him to a new trial as a matter of right. I further agree that the judge to whom the application for a new trial was addressed might very properly have followed the ruling of the local district judge in Parkhurst v. Price, supra, even if he was of the opinion that that decision was probably erroneous, leaving the aggrieved party to prosecute a writ of error from the order granting the new trial. I cannot assent to the view, however, which seems to be maintained by my associates, that he was bound to follow the rule previously applied in Parkhurst v. Price, if he thought that rule, as applied to the case at bar, was clearly wrong. Judge Hallett entertained doubt with respect to the question, and decided it with much apparent hesitation. His language was as follows:

"When there is a mistrial or a failure of the jury to agree, and no order whatever is made in respect to such costs, it seems to me to be a logical conclusion that each party ought to pay the costs which he has made. This, however, is so far doubtful that I confess I should feel some embarrassment if I were acting as counsel in this case, or in any other presenting a similar question. * * * The clerk may conform the taxation to these suggestions, casting out all costs at the mistrial except meals for jurors."

Under the circumstances, I think the decision in Parkhurst v. Price can hardly be said to have established a rule of property or procedure which all judges sitting in the same court were thereafter bound to follow until the rule was reversed on appeal. But, be this as it may, inasmuch as the statute was rightly construed in this case by the circuit court, and inasmuch as the plaintiffs in error did not in fact pay the costs entitling them to a new trial within the statutory period, I am of the opinion that this court has no power to extend the time fixed by law for the payment of such costs. The right to a new trial depends upon a literal compliance with the conditions prescribed by statute, both as respects the costs to be paid and the time within which they shall be paid; and no court, in my judgment, is vested with power to enlarge the time within which the costs must be paid to entitle the losing party to a new trial as a matter of right. For these reasons I am constrained to dissent from the order reversing the case, and granting 60 days within which to pay the costs. The view taken by my associates puts the judge who acted on the motion for a new trial in the awkward predicament of not being able to decide the case right, for, in whichever way he decided it, he was bound to be reversed. Moreover, this court makes an order awarding the plaintiff in error a new trial, which order would have been so far erroneous that it would have been reversed by this court if it had been made by the circuit court. I think, therefore that the judgment should be affirmed.